## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **LARRY ALLEN MIZE** | § | |
| | § | |
| **V.** | § | **A-13-CA-474-LY** |
| | § | |
| **WILLIAM STEPHENS, Director,** | § | |
| **Texas Dept. of** | § | |
| **Criminal Justice-Correctional** | § | |
| **Institutions Division** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 9); and Petitioner's response thereto (Document 11). Petitioner, proceeding pro se, has been granted leave to proceed in forma pauperis. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

### A.    Petitioner's Criminal History

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 421st Judicial District Court of Caldwell County, Texas, in cause

number 2010-246.  Petitioner's indictment charged him with theft.  The indictment also contained five enhancement paragraphs that alleged a prior conviction for bail jumping and four prior convictions for theft.  A jury found Petitioner guilty, and the trial court determined that the enhancement paragraphs were true.  On June 14, 2011, the trial court sentenced Petitioner to twenty years' imprisonment.

The Third Court of Appeals affirmed Petitioner's conviction on April 27, 2012.  Mize v. State, No. 03-11-00445-CR, 2012 WL 1499481 (Tex. App. – Austin 2012, no pet.).  Petitioner did not file a petition for discretionary review.

Petitioner also challenged his conviction in a state application for habeas corpus relief.  Ex parte Mize, Appl. No. 54,344-04 at 2-56.  The Texas Court of Criminal Appeals denied the application without written order on May 22, 2013.  Id. at cover.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

> Mize was charged with stealing money from Dorothy Lamb, an 87–year–old woman. The jury heard evidence that on October 20, 2009, Mize knocked on Lamb's door and asked to inspect her garage door. Lamb testified that Mize "just showed up at my house and told me that he would check my garage door opener [for] free." According to Lamb, Mize's demeanor was "very nice" and "very personable." She added, "He got my confidence." After performing the inspection, Mize proceeded to explain to Lamb that she needed repair work on her garage door, including, in Lamb's words, "a new spring," "some gears or something," and "lubricating." Lamb agreed to the repairs and paid Mize approximately $150 for the work. In February 2010, Mize returned to Lamb's home and told her that additional work on her garage door was needed. Lamb agreed to have the work done and paid Mize $216.88 to complete it. One month later, Lamb recounted, Mize returned and told her that her garage door opener needed to be replaced. Mize then made a phone call in Lamb's presence. During the call, Lamb testified, Mize appeared to order a new garage door opener and inform the person with whom he was speaking that he would have a money order "in

2

the mail in the morning." After ending the call, Mize told Lamb that because he had already ordered the garage door opener, he would need money from her "up front." Lamb testified that she paid Mize approximately $450 and that she was told by Mize that he would return with the garage door opener in "two to four weeks." However, Mize never returned and the garage door opener was never delivered. Over a period of several months, Lamb and her daughter attempted, unsuccessfully, to contact Mize and get him to deliver and install the garage door opener as he had promised.

"In the meantime," Lamb testified, her current garage door opener "had gone out and didn't work." Lamb eventually obtained a new garage door opener from a company in Seguin for approximately $100 less than what Mize had charged. According to Lamb, when a representative from the Seguin company came out and inspected her garage door opener, he told her that it had been "wired all wrong." Lamb also testified that before Mize had inspected and worked on her garage door, she had never encountered any problems with it.

Receipts and invoices showing the amounts Lamb had paid to Mize and the products and services for which she had paid were admitted into evidence. Also admitted into evidence were copies of a business card that Mize had given to Lamb. The card contains Mize's name, the name of an apparently fictitious company, "Countrywide Garage Doors," FN1 and two phone numbers for the company, one located in the Victoria and Rockport area, and the other located in San Antonio. Lamb testified that she made numerous calls to these numbers inquiring into the status of her order.

> FN1. A certificate from the Office of the Texas Secretary of State was admitted into evidence showing that "a diligent search of the records of this office was performed on the name Countrywide Garage Doors" and that "[t]here is no record of a domestic corporation, professional corporation, professional association, limited partnership, limited liability partnership, or limited liability company by the name searched."

When Lamb called the numbers, she was directed to an answering service. Lamb testified that Mize "would call me back sometimes, and sometimes he wouldn't." According to Lamb, when Mize did return her calls, he provided excuses for his failure to deliver the garage door opener. During one such call, Lamb testified, Mize told her, "You have a garage door opener, but these people down here don't have one." FN2 As Lamb continued making calls to the numbers Mize had provided to her, the answering service operators eventually began telling Lamb to stop calling. When Lamb called the San Antonio number, she was told, "Don't you call us again. He's not a customer of ours." When Lamb called the Victoria number, she was told, "We've had too many complaints. I'm going to have to talk to my supervisor." And

during another call, Lamb was told, "Lady, I would advise you to go file charges with your police department."

> FN2. The record is unclear as to whom Mize was referring, although Lamb testified that she believed Mize was calling her from Palacios, which is a city near the coast and southeast of Victoria.

Eventually, Lamb did so. Detective Kenneth Schmidt of the Luling Police Department conducted an investigation and interviewed Lamb. According to Schmidt, Lamb told him that in the seven to eight months since she had paid for the garage door opener, she had not received it. Schmidt also testified that door-to-door solicitors need a permit to do business in Luling and that Mize had no such permit.

During the investigation, Detective Schmidt learned of another woman, 74–year–old Betty Sue Blackwell Townes, a neighbor of Lamb's, who had reported a similar incident to the police. Townes testified during trial. According to Townes, Mize showed up at her house one day and asked her if she was having any problems with her garage door. After Townes told him that she was having some problems with it, Mize agreed to fix it for a fee of either $20 or $30. At some later date, Townes recalled, Mize returned and told her that she needed a new garage door opener "because this one might catch on fire." This caused Townes particular concern because she kept oxygen tanks in her house. She explained, "And that's not a good thing, [ ] fire. I mean, you go boom and all that." Townes wrote Mize a check for $451 for a new garage door opener. Townes testified that Mize told her that she would receive the garage door opener "soon" but did not specify an estimated date of delivery. However, Townes did not see "hide nor hair" of Mize again. She added that her garage door opener was still working properly and that "it ain't caught on fire, either." Townes began to suspect that Mize had defrauded her when she called his answering service and was told, "We don't know where he is." FN3

> FN3. During her testimony, Ms. Townes also acknowledged that she was the Betty Sue Blackwell who had been Luling's first Watermelon Thump Queen.

The jury also heard testimony from Jason Burmeister, the owner of the company that had provided answering services to Mize from 2009 through July 2010. FN4 Through the answering service, numerous calls were made to Mize, many of them complaints. Written summaries of these calls were admitted into evidence. Two of the calls were from Lamb and expressed her unhappiness with Mize's failure to install her garage door opener. Summaries of multiple calls from other dissatisfied customers were also admitted into evidence.FN5

> FN4. Burmeister testified that the company terminated its services to Mize at that time due to Mize's failure to pay for the services.
>
> FN5. The summaries of these calls included: "Garage door that you know about that is still out of adjustment"; "Garage door is still not fixed properly. Please call"; "As per caller, garage door is still not working after you have completed repairs"; "Purchased motor from you and has not yet received it"; and "Has been waiting a month on the garage door."

Also admitted into evidence were account statements from Texas Dow Employees Credit Union, where Mize had a d/b/a account for Countrywide Garage Doors. The statements, which reflect account activity from April to September 2010, show several large deposits into and numerous withdrawals from the account. Luke Billeri, the regional vice president of the credit union, testified that the withdrawals appeared to be for purchases made at hotels, restaurants, bars, and even an amusement park. However, according to Billeri, the statements did not reflect any withdrawals for the purchase of a garage door opener.

The jury found Mize guilty of the offense of theft as charged, and the district court assessed punishment as noted above.

Mize v. State, No. 03-11-00445-CR, 2012 WL 1499481 at, *1-3 (Tex. App. – Austin 2012, no pet.).

## C.    Petitioner's Grounds for Relief

Petitioner raises the following grounds for relief:

1.    His appellate counsel rendered ineffective assistance by failing to:

    a.    challenge the sufficiency of the evidence; and

    b.    argue that his trial attorney rendered ineffective assistance of counsel;

2.    His trial counsel rendered ineffective assistance by failing to:

    a.    obtain an independent investigator;

    b.    challenge the unlawful enhancement paragraphs;

    c.    obtain evidence showing Petitioner had other satisfied customers;

    d.    subpoena copies of invoices from Petitioner's garage door parts supplier;

e.      obtain his IRS tax number and D/B/A;

f.      obtain copies of the invoices given to the victim that show the work he completed;

g.      gather the facts about Petitioner's garage door company;

h.      be prepared to give Petitioner effective counsel during the plea bargaining phase;

i.      object to the State's coercion of the jury pool;

j.      honor his request to strike a friend of Detective Collie from the jury;

k.      question the detectives about a missing recording that proved the police questioned Petitioner without counsel;

l.      object to the State's manipulation of the facts before the jury;

m.      object to the State's assertion that Petitioner's garage door company did not exist;

n.      object to the State's manipulation of the victim that caused her to change her testimony;

o.      object to the victim's hearsay testimony;

p.      request a continuance after Petitioner's bank statement was faxed in during the trial;

q.      prepare for the questioning of Ms. Townes;

r.      object to the improper jury instructions;

s.      file a motion during the guilt phase of the trial; and

t.      file a motion asserting that the prosecution was malicious;

3.      The trial judge gave improper jury instructions;

4.      The State maliciously prosecuted Petitioner;

5.      The enhancement paragraphs were illegal;

6.    His sentence is cruel and unusual punishment;

7.    The indictment was invalid because it failed to provide him with clear information on the range of punishment;

8.    The State violated Petitioner's presumption of innocence by using testimony from Ms. Townes, who was involved in another case pending against him; and

9.    The State withheld exculpatory evidence.

**D.    Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.

<u>**DISCUSSION AND ANALYSIS**</u>

**A.    The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court has summarized the basic principles that have grown out of the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act.   <u>See</u> <u>Harrington</u> <u>v. Richter</u>, – U.S. –, 131 S. Ct. 770, 783-85 (2011).  The Court noted that the starting point for any federal court in reviewing a state conviction is 28 U.S.C. § 2254, which states in part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Court noted that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington, 131 S. Ct. at 784.

One of the issues Harrington resolved was "whether § 2254(d) applies when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." Id.  Following all of the Courts of Appeals' decisions on this question, Harrington concluded that the deference due a state court decision under § 2554(d) "does not require that there be an opinion from the state court explaining the state court's reasoning."  Id. (citations omitted).  The Court noted that it had previously concluded that "a state court need not cite nor even be aware of our cases under § 2254(d)."  Id. (citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)).  When there is no explanation with a state court decision, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief."  Id.  And even when a state court fails to state which of the elements in a multi-part claim it found insufficient, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." Id.

As Harrington noted, § 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the Supreme Court; (2) when the earlier decision "involved an unreasonable application of" such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court.  Id. at 785 (citing 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412, 120 S. Ct. 1495, 1523 (2000)).  The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions

as of the time of the relevant state-court decision." <u>Dowthitt v. Johnson</u>, 230 F.3d 733, 740 (5th Cir. 2000) (quotation and citation omitted).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than . . . [the Supreme Court] has on a set of materially indistinguishable facts.

<u>Id.</u> at 740-41 (quotation and citation omitted). Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 741 (quotation and citation omitted). The provisions of § 2254(d)(2), which allow the granting of federal habeas relief when the state court made an "unreasonable determination of the facts," are limited by the terms of the next section of the statute, § 2254(e). That section states that a federal court must presume state court fact determinations to be correct, though a petitioner can rebut that presumption by clear and convincing evidence. <u>See</u> 28 U.S.C. § 2254(e)(1). But absent such a showing, the federal court must give deference to the state court's fact findings. <u>Id.</u>

**B.     Ineffective Assistance of Trial Counsel Claim**

Petitioner raises a laundry list of ineffective assistance of counsel claims. Petitioner raised these same issues in his state application for habeas corpus relief. The state courts rejected the merits of Petitioner's claim. As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claim by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision

9

that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in <u>Strickland v. Washington</u>, 466 U.S. 668  (1984):

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

<u>Id.</u> at 687.  In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential.  <u>Id.</u> at 686-689.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Id.</u> at 689.  "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  <u>Id.</u> (Citation omitted).  Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged.  <u>Id.</u> at 695-97.  Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective

standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687.

Plaintiff's claims of ineffective assistance of counsel are wholly conclusory.  Petitioner explains none of his claims and offers no legal support for them.  The Fifth Circuit has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding.  Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).  Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**C.     Ineffective Assistance of Appellate Counsel**

Petitioner also argues he was denied effective assistance of appellate counsel.  Specifically, Petitioner alleges counsel should have challenged the sufficiency of the evidence on appeal and argued Petitioner's trial counsel was ineffective.

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. Const. amend. VI, XIV; Evitts v. Lucey, 469 U.S. 387, 393-95, (1985); Strickland, 466 U.S. at 688; Anders v. California, 386 U.S. 738, 744 (1967).  An ineffective assistance claim is governed by the familiar standard set forth in Strickland, 466 U.S. at 668. See also Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001) (applying the Strickland standard to ineffective assistance claims against appellate counsel).  As explained earlier, to establish ineffective assistance of counsel Petitioner must show (1) that counsel's performance fell below an objective

11

standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different.  Strickland, 466 U.S. at 688.  To show prejudice, a petitioner must show that, but for appellate counsel's performance, there is a reasonable probability he would have prevailed on appeal.  Smith v. Robbins, 528 U.S. 259, 285 (2000).

Contrary to Petitioner's argument, appellate counsel did challenge the sufficiency of the evidence in Petitioner's case.  In fact, that was the sole claim raised on direct appeal.  The state appellate court explained:

> A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a). Appropriation of property is unlawful if it is without the owner's effective consent. Id. § 31.03(b)(1). Consent is not effective if induced by deception or coercion. Id. § 31.01(3)(A) (West Supp.2011). In this case, "deception" means "promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or knew the promise would not be performed." Id. § 31.01(1)(E).

> Mize asserts that the evidence is insufficient to prove the element of deception as defined above. Specifically, Mize claims that he did nothing more than fail to perform the promise he had made to Lamb and that he had no intent to deceive her. See, e.g., Peterson v. State, 645 S.W.2d 807, 812 (Tex. Crim. App. 1983) (holding that when "money ... was voluntarily given to appellant pursuant to a contractual agreement, [and] there is insufficient evidence in the record to show the money was obtained by deception, the conviction cannot stand"); Phillips v. State, 640 S.W.2d 293, 294 (Tex. Crim. App. 1982) (holding that evidence that defendant failed to perform promise is insufficient evidence of deception). The State responds that the evidence was sufficient to prove that Mize was essentially a "con man" who preyed on Lamb and other elderly individuals by gaining their trust, convincing them that they needed his services, and then taking their money without performing the services that he had promised them.

> We agree with the State. The record in this case provides sufficient evidence from which a rational jury could reasonably infer that Mize had an intent to deceive Lamb. This evidence, which we have summarized more extensively above, includes:

Evidence tending to show that Mize was not who he claimed to be. A business card that Mize had given to Lamb made it appear that Mize worked for a company named Countrywide Garage Doors, with offices in Victoria, Rockport, and San Antonio. However, according to a certificate from the Texas Secretary of State's Office, no such company exists in Texas. Also, according to Detective Schmidt, door-to-door solicitors need a permit to do business in Luling, but Mize had no such permit.

Evidence tending to show that Mize may have manipulated Lamb's old garage door opener in order to convince her that she needed a new one. Lamb testified that she had no problems with her garage door before Mize had inspected it but that the garage door opener had stopped working after Mize had handled it. According to Lamb, a garage door specialist later told her that it had been "wired all wrong."

Evidence tending to show the manner in which Mize had first approached Lamb, gained her trust and confidence, and then, after accepting a final payment from her, essentially disappeared without performing the service he had promised. Lamb testified that first, Mize had offered to inspect her garage door for free; next, he had asserted that certain minor repairs were needed (even though Lamb had not noticed any problems with her garage door); and finally, he had claimed that Lamb needed a certain product, demanded that the money for that product be paid "up front," and, once he had obtained the money, was never seen by Lamb again.

Evidence tending to show that it was difficult for Lamb to contact Mize. Lamb testified that although Mize would sometimes return her calls, many times he did not respond to either Lamb's calls or her daughter's emails. Furthermore, according to Lamb, the operators of the answering service that Mize had used at the time eventually asked Lamb to stop calling them because they had received "too many complaints" regarding Mize and advised her to "file charges with your police department."

Evidence tending to show that Mize had made withdrawals from his "d/b/a Countrywide Garage Doors" account for recreational purchases but not for the purchase of a garage door opener.

Evidence tending to show that Mize's failure to perform the service he had promised to Lamb was not an isolated incident but was instead indicative of a pattern of deceptive conduct committed against Lamb and other victims. This evidence included the written summaries of numerous calls that Mize's answering service had received, many of which involved complaints regarding Mize's failure to perform the services he had promised. Other such evidence included the testimony of Betty Townes, Lamb's neighbor, who had reported an incident involving Mize similar to Lamb's experience. According to Townes, Mize had told her, after performing minor repairs on her garage door, that she needed a new garage door opener because her

current one "might catch on fire"; had received payment from her for a new garage door opener; and then, as he did with Lamb, had disappeared without delivering the garage door opener.

When considering the totality of the above evidence and other facts in the record, the jury could have reasonably inferred that: (1) Mize had intended to deceive Lamb into believing that he was employed by an actual company that specialized in garage doors when, in fact, he did not; (2) Mize was not a legitimate businessman but was instead, as the State alleged, a "con man" who was attempting to deceive unsuspecting individuals, including Lamb, into giving him money for services and products that they did not need; (3) from the moment he had first knocked on Lamb's door, Mize intended to deceive Lamb into purchasing a garage door opener that he knew he would not deliver; and (4) Mize had intended to deceive Lamb in a manner similar to how he had deceived others, including Lamb's neighbor, Ms. Townes.

Viewing the above evidence and all reasonable inferences therefrom in the light most favorable to the verdict, we conclude that a rational jury could have found the element of deception beyond a reasonable doubt. Accordingly, the evidence is sufficient to prove that Mize committed the offense of theft as charged. We overrule Mize's sole point of error.

Mize v. State, No. 03-11-00445-CR, 2012 WL 1499481 at, *3-5 (Tex. App. – Austin 2012, no pet.).

In addition, as explained in the previous section, Petitioner has not shown he received ineffective assistance of trial counsel. Moreover, Petitioner's claim of ineffective assistance of counsel was not developed so that it could have been raised on direct appeal. Accordingly, appellate counsel was not deficient for failing to raise a frivolous claim. Petitioner simply has not identified any issue which, if raised on appeal, would have resulted in the reasonable probability of Petitioner prevailing on appeal. Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

**D.      Remaining Claims**

Petitioner's remaining claims fail.  When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254, it must decide whether the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."  Petitioner's allegations do not raise a valid federal habeas claim.

Petitioner first contends the trial court improperly answered a jury question during deliberations.  According to Petitioner, the jury asked why the case was not in civil court.  The trial court allegedly instructed the jury not to concern themselves with whether the case appeared to be a civil dispute. Petitioner has not shown this response to be invalid or a violation of his constitutional rights.

Petitioner next contends the State maliciously prosecuted him.  Petitioner complains the State sought a twenty-year sentence for what he believed was a civil dispute between two parties. Contrary to Petitioner's subjective belief, the appellate court determined the evidence was legally sufficient to support Petitioner's conviction for theft, which supported his sentence.

Petitioner also contends there was "unlawful use of the enhancement provisions of the Texas Code of Criminal Procedures."  Specifically, he states "the enhancement provisions used by the State is unlawful in that Ms. Lamb's daughter and son-in-law was both present and approved the work completed by the Defendant" and "the State enhanced from a civil dispute to a 2nd degree felony." Petitioner's contentions fail to allege a violation of his constitutional rights.

Petitioner next contends his twenty-year sentence was cruel and unusual because the theft was less than $500 and he refunded $450 to Ms. Lamb after trial but before sentencing.   The Eighth Amendment prohibits sentences that are grossly disproportionate to the crime.  In Petitioner's case,

his indictment listed four other convictions for theft and one for bail jumping.  His sentencing range was two to twenty years.  Although Petitioner received the maximum sentence, this punishment is not constitutionally disproportionate to his offense.  See Rummel v. Estelle, 445 U.S. 263, 285 (1978) (life sentence imposed on an offender convicted of theft under $200 was not cruel and unusual punishment because he had previously been convicted of two felonies and was prosecuted under the Texas recidivist statute).  Recidivist statutes punish not only the offense of conviction but also the "propensities" of the defendant demonstrated by his prior convictions for other crimes.  Id. at 283-285.

Petitioner also contends the indictment was invalid because it failed to give the defendant clear information with regard to the range of punishment the State was going to pursue.  "The sufficiency of a state indictment is not a matter for federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction."  McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), cert. denied, 553 U.S. 854 (1994); Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993).  "For an indictment to be 'fatally defective,' no circumstances can exist under which a valid conviction could result from facts provable under the indictment."  Morlett v. Lynaugh, 851 F.2d 1521, 1523 (5th Cir. 1988), cert. denied, 489 U.S. 1086 (1989).  State law determines whether an indictment is sufficient to vest jurisdiction in the state trial court.  Williams v. Collins, 16 F.3d 626, 637 (5th Cir.), cert. denied, 512 U.S. 1289 (1994).  However, consideration of the sufficiency of an indictment is foreclosed in federal proceedings if the state's highest court has determined that the indictment is sufficient.  Yohey, 985 F.2d at 229; Morlett, 851 F.2d at 1523.  In the present case, Petitioner raised the insufficient indictment claim in his state application for habeas corpus review.  The Texas Court of Criminal Appeals denied Petitioner's application without written order.  The

16

Texas Court of Criminal Appeals in declining to grant relief has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose. McKay, 12 F.3d at 68 (citing Alexander v. McCotter, 775 F.2d 595, 599 (5th Cir. 1985)). Accordingly, this Court is precluded from finding that the indictment was so defective that it divested the state trial court of jurisdiction.

Petitioner next contends his presumption of innocence was violated when the State used Ms. Towne's testimony, knowing Defendant had a pending indictment against him regarding her claims. Petitioner's claim does not allege a federal constitutional violation.

In his final ground for relief, Petitioner asserts his conviction was obtained by the prosecution's failure to tell him about evidence favorable to his defense. Specifically, Petitioner complains the State failed to present copies of three invoices Petitioner gave Ms. Lamb for work completed. In addition, he claims the State failed to present to Petitioner a tape recording of his interview made by Detectives Collie and Schmidt.   In Brady v. Maryland, 373 U.S. 83 (1963), the Court held the suppression by the prosecution of evidence favorable to an accused after a request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.  To establish a Brady violation, Petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) which was favorable and (3) material to the defense.  Id. at 87; Allridge v. Scott, 41 F.3d 213, 217 (5th Cir. 1994), cert. denied, 514 U.S. 1108 (1995).  The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  United States v. Bagley, 473 U.S. 667, 682 (1985).  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.  Id. Brady encompasses evidence that may be used

17

to impeach a witness's credibility. Id. at 676, 105 S. Ct. at 3380. There is no Brady violation if the defendant, using due diligence, could have obtained the information. Williams v. Scott, 35 F.3d 159, 163 (5th Cir. 1994), cert, denied, 513 U.S. 1137 (1995) (citing United States v. Ramirez, 810 F.2d 1338, 1343 (5th Cir.), cert. denied, 484 U.S. 844 (1987)). As explained by Respondent, the invoices referenced by Petitioner were his invoices. As such, they do not constitute Brady materials. Respondent also points out Petitioner has presented no evidence that a recording ever existed.

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would

find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## **OBJECTIONS**

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

19

district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153 (1985);

Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of May, 2014.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE